FILED
CLERK, U.S. DISTRICT COURT
7/1/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: KM DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2026 Grand Jury

UNITED STATES OF AMERICA,

Plaintiff,

v.

LAWRENCE BISHNOI,
SATINDERJEET SINGH,
aka "Satinderjit Singh Brar,"
aka "Goldy Brar,"
ROHIT GODARA,
aka "Guru,"
aka "Jai Shri Ram,"
aka "Rawata Ram,"
aka "Rawata Das,"
aka "Pawan Kumar,"
SUKHRAJ SINGH KANG,
FNU LNU,
aka "Rajan Bhatti,"
aka "Victor,"
aka "Kala,"
aka "Vankit,"
FNU LNU,
aka "Bhulwan,"
FNU LNU,
aka "Sumit,"
NO NAME GIVEN KAMAL, and
KESTUTIS BAUZA,

Defendants.

CR 2:26-cr-00428-WLH

I N D I C T M E N T

[18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. § 1951(a): Conspiracy to Interfere and Attempted Interference with Commerce by Extortion; 21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 18 U.S.C. §§ 1963, 981, 924, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c): Criminal Forfeiture]

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1962(d)]

[DEFENDANTS BISHNOI, SINGH, GODARA, KANG, BHATTI, BHULWAN, AND SUMIT]

At times relevant to this Indictment:

A. THE RACKETEERING ENTERPRISE

1. Defendants LAWRENCE BISHNOI, SATINDERJEET SINGH, also known as ("aka") "Satinderjit Singh Brar" and "Goldy Brar," ROHIT GODARA, aka "Guru," "Jai Shri Ram," "Rawata Ram," "Rawata Das," and "Pawan Kumar," SUKHRAJ SINGH KANG, First Name Unknown ("FNU") Last Name Unknown ("LNU"), aka "Rajan Bhatti," "Victor," "Kala," and "Vankit" ("BHATTI"), FNU LNU, aka "Bhulwan" ("BHULWAN"), and FNU LNU, aka "Sumit" ("SUMIT"), and others known and unknown to the Grand Jury, were members and associates of a criminal organization engaged in, among other things, acts involving extortion and trafficking in controlled substances. This organization, known as the Lawrence Bishnoi Organized Crime Group (the "Bishnoi OCG"), operated in the Central District of California and elsewhere. The Bishnoi OCG, including its leadership, members, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which engaged in, and the activities of which affected, interstate and foreign commerce. The Bishnoi OCG constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

B. BACKGROUND OF THE BISHNOI OCG

2. The Bishnoi OCG originated in the Punjab state of India, under the leadership of its founder, defendant BISHNOI. While

enrolled in university in the early 2010s, defendant BISHNOI styled himself as a student leader and developed a network of associates and followers. Defendant BISHNOI soon thereafter traded campus politics for criminal activity, and refashioned his associates and followers into a criminal organization.

3. Indian law enforcement authorities arrested defendant BISHNOI on criminal charges in 2015. Notwithstanding BISHNOI's incarceration, the Bishnoi OCG evolved over the following years into a transnational criminal syndicate headquartered in India with members across the United States, Canada, the United Kingdom, Europe, Australia, and elsewhere. The Bishnoi OCG included thousands of members and associates worldwide, and hundreds of members and associates in the United States and Canada.

4. The Bishnoi OCG engaged in violent criminal activity in each country in which it operated, including the United States. The Bishnoi OCG used violence to cultivate a climate of fear, in particular in India and among Indian diaspora communities outside of India, that the Bishnoi OCG exploited to extort victims around the world. These acts of violence included political assassinations, murders, shootings, kidnappings, maimings, and assaults.

5. Defendant BISHNOI was the global leader of the Bishnoi OCG. In public, defendant BISHNOI projected an image of himself as a "patriot," "nationalist," and deeply religious individual. Defendant BISHNOI projected this public image through, among other outlets, social media posts and interviews with news organizations. Defendant BISHNOI used this public image to recruit members and associates to the Bishnoi OCG in India, the United States, and elsewhere.

6. In private, defendant BISHNOI presided over a sweeping criminal enterprise that spanned multiple continents. Using contraband cellphones and other voice over internet protocol devices smuggled into his jail cell, defendant BISHNOI personally directed political assassinations, murders, shootings, extortions, kidnappings, drug trafficking, human smuggling, and other crimes committed by members and associates of the Bishnoi OCG worldwide.

7. To help manage the day-to-day operations of the Bishnoi OCG, defendant BISHNOI delegated control to trusted lieutenants and regional leaders of the enterprise. These lieutenants and regional leaders effectively spoke for defendant BISHNOI, and helped direct the actions of members and associates of the Bishnoi OCG around the world.

8. Defendant SINGH, a childhood friend of defendant BISHNOI, directed the North American operations of the Bishnoi OCG. Defendant GODARA directed the European operations of the Bishnoi OCG. In their respective areas of control, as well as in other areas around the world, defendants SINGH and GODARA directed targeted killings, shootings, kidnappings, maimings, assaults, extortions, and drug trafficking.

9. Acts of violence committed by members and associates of the Bishnoi OCG often targeted prominent cultural, political, and business leaders in India and diaspora communities outside of India. Defendants BISHNOI, SINGH, and GODARA, together with other members and associates of the Bishnoi OCG, frequently claimed public responsibility for these violent acts, including through videos and written messages publicly posted online. The Bishnoi OCG used this high-profile violence and the public promotion of that violence to

cultivate a widespread climate of fear, and to fuel the notion, promoted by members and associates of the Bishnoi OCG, that the Bishnoi OCG was invulnerable to or otherwise beyond the reach of law enforcement.

10. Defendant SINGH and the Bishnoi OCG claimed responsibility through an interview with a media outlet, and through a Facebook post, for ordering and directing the murder of S.S.S., a prominent Indian singer and rapper who was murdered on May 29, 2022 in Mansa, a district in the Punjab state of India. Between 2022 and 2026, defendant BISHNOI announced, on multiple occasions, his intention to murder S.K., a well-known Indian actor and television personality. Members and associates of the Bishnoi OCG used these and similar claims to promote the enterprise and instill fear in the public, including to extort members of the public based on fear of the Bishnoi OCG.

11. Members and associates of the Bishnoi OCG also engaged in acts of violence as a source of revenue. Members and associates of the Bishnoi OCG accepted murder-for-hire and extortion-for-hire contracts around the world, and murdered and extorted victims in India, the United States, Canada, and elsewhere for profit.

12. The Bishnoi OCG extorted and attempted to extort victims around the world, including prominent cultural, political, and business leaders in India and diaspora communities outside of India. Members and associates of the Bishnoi OCG identified extortion targets through government databases, social media platforms, and in-person surveillance. Members and associates of the Bishnoi OCG obtained pattern-of-life information on extortion targets and information about family members of extortion targets, often focusing

on family members located in India. Members and associates of the Bishnoi OCG contacted extortion targets through encrypted applications and demanded payment. In these communications, Bishnoi OCG members and associates often threatened to kill or otherwise harm victims or their families, referenced prior acts of violence committed by the Bishnoi OCG, and/or offered victims protection from future acts of violence.

13. Members and associates of the Bishnoi OCG engaged in the distribution of controlled substances in the United States and elsewhere, including, but not limited to, cocaine, methamphetamine, and heroin. Members and associates of the Bishnoi OCG imported controlled substances into the United States, exported controlled substances out of the United States, and distributed controlled substances within the United States, including by providing transportation services to other drug trafficking organizations.

14. Members and associates of the Bishnoi OCG stole, or “ripped,” bulk quantities of cocaine and methamphetamine from other drug trafficking organizations, including by stealing loads of cocaine and methamphetamine being transported by the Bishnoi OCG for other drug trafficking organizations.

15. Members and associates of the Bishnoi OCG shared profits obtained from criminal activities conducted on behalf of the enterprise. The Bishnoi OCG distributed certain profits to Bishnoi OCG members and associates operating in the region of the relevant criminal activity, and directed other profits back to members and associates in India.

16. The Bishnoi OCG recruited new members primarily from vulnerable, disadvantaged populations in India, including through

promotional videos and messages posted on social media sites. The Bishnoi OCG often recruited minors from impoverished areas in the Punjab state of India. The Bishnoi OCG targeted minors for recruitment to minimize the sentencing exposure that would otherwise attach to violent criminal activity committed by members and associates of the enterprise. Recruitment coordinators for the Bishnoi OCG enticed impoverished minors in India to join the enterprise by promising, among other things, money, notoriety, and protection.

17. Upon being recruited into the Bishnoi OCG in India, new members of the Bishnoi OCG received minimal compensation for criminal acts committed on behalf of the enterprise. The Bishnoi OCG sent loyal members to countries outside India, including the United States and Canada, on student visas and foreign worker visas -- often containing fraudulent information -- to assist the enterprise's criminal operations in those countries.

18. Membership in the Bishnoi OCG was decentralized. With the exception of its leaders, Bishnoi OCG members and associates often had limited information on the identities or backgrounds of other Bishnoi OCG members and associates. This decentralized structure created a level of separation between the Bishnoi OCG and the crimes committed by its members and associates. This decentralized structure also protected the enterprise and its members from criminal liability in the event a Bishnoi OCG member or associate was arrested for a crime and decided to cooperate with law enforcement.

19. Leaders within the Bishnoi OCG, including defendants BISHNOI, SINGH, and GODARA, used the Bishnoi OCG's resources, including its vast membership ranks and deep connections within

India, to obtain information on family members of Bishnoi OCG members and associates living in India. Bishnoi OCG members and associates understood that, if they were disloyal to the enterprise, other Bishnoi OCG members or associates would kill or otherwise harm them or their family members, particularly those located in India. Bishnoi OCG members and associates threatened to kill or harm, and did kill and harm, other members and associates, and family members of those members and associates, believed to be cooperating with law enforcement or otherwise perceived to be disloyal.

C. PURPOSES OF THE ENTERPRISE

20. The purposes of the Bishnoi OCG included, but were not limited to, the following:

a. Enriching the members and associates of the Bishnoi OCG through, among other crimes, murder-for-hire contracts, the collection of extortion payments, and the distribution of controlled substances;

b. Creating a widespread climate of fear that the Bishnoi OCG could leverage in service of extortion schemes;

c. Promoting and enhancing the reputation and activities of the Bishnoi OCG and its members and associates;

d. Preserving, protecting, and expanding the power of the Bishnoi OCG through the use of threats, intimidation, and acts of violence, including murder and assault; and

e. Maintaining control and authority over territories and communities controlled by the Bishnoi OCG, including through extortion, threats, intimidation, and acts of violence.

D. <u>MEANS AND METHODS OF THE ENTERPRISE</u>

21. The means and methods by which defendants BISHNOI, SINGH, GODARA, KANG, BHATTI, BHULWAN, and SUMIT, and other members and associates of the Bishnoi OCG, conducted and participated in the conduct of the affairs of the Bishnoi OCG included the following:

a. Members and associates of the Bishnoi OCG committed, attempted to commit, conspired to commit, and threatened to commit acts of violence, including targeted killings, shootings, kidnappings, maimings, assaults, and extortions to create a climate of fear, promote and enhance the Bishnoi OCG's reputation for violence, expand the Bishnoi OCG's criminal operations, and maximize the likelihood of victim compliance with extortion demands made by members and associates;

b. Members and associates of the Bishnoi OCG claimed responsibility for acts of violence and other criminal activity to create a climate of fear, promote and enhance the Bishnoi OCG's reputation for violence, and maximize the likelihood of victim compliance with extortion demands made by members and associates;

c. Members and associates of the Bishnoi OCG extorted and attempted to extort victims to generate revenue for the enterprise;

d. Members and associates of the Bishnoi OCG trafficked and stole controlled substances to generate income for the Bishnoi OCG; and

e. Members and associates of the Bishnoi OCG violently retaliated against rival gang members, individuals believed to be cooperating with law enforcement or otherwise disloyal, and others who challenged the Bishnoi OCG's authority or values to maintain a

climate of fear, promote and enhance the Bishnoi OCG's reputation for violence, and protect the Bishnoi OCG's criminal operations.

E. OBJECT OF THE RACKETEERING CONSPIRACY

22. Beginning on a date unknown to the Grand Jury, and continuing to on or about July 1, 2026, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants BISHNOI, SINGH, GODARA, KANG, BHATTI, BHULWAN, and SUMIT, and others known and unknown to the Grand Jury, each being a person employed by and associated with the Bishnoi OCG, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Bishnoi OCG through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and (5), consisting of:

a. multiple acts involving extortion, chargeable under California Penal Code Sections 21a, 31, 182, 518, 519, 520, and 664;

b. multiple acts indictable under Title 18, United States Code, Section 1951(a) (relating to interference with commerce by robbery and extortion); and

c. multiple offenses involving trafficking of controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

23. It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

F. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

24. The object of the conspiracy was to be accomplished, in substance, as follows:

a. Defendant BISHNOI, the global leader of the Bishnoi OCG, would direct and coordinate acts of violence committed by Bishnoi OCG members and associates in the United States, Canada, and elsewhere, including, but not limited to, targeted killings, shootings, kidnappings, maimings, and assaults.

b. Defendant SINGH, the North American leader of the Bishnoi OCG, would direct and coordinate acts of violence committed by Bishnoi OCG members and associates in the United States, Canada, and elsewhere, including, but not limited to, targeted killings, shootings, kidnappings, maimings, and assaults.

c. Defendant GODARA, the European leader of the Bishnoi OCG, would direct and coordinate acts of violence committed by Bishnoi OCG members and associates in Europe, as well as in the United States, Canada, and elsewhere, including, but not limited to, targeted killings, shootings, kidnappings, maimings, and assaults.

d. Defendant KANG, a high-level, India-based lieutenant in the Bishnoi OCG, would direct and coordinate acts of violence committed by Bishnoi OCG members and associates in the United States, Canada, and elsewhere, including, but not limited to, targeted killings, shootings, kidnappings, maimings, and assaults.

e. Defendants BISHNOI, SINGH, GODARA, and KANG, and others known and unknown to the Grand Jury, would identify victims to target with acts of violence, including, but not limited to, murder, assault, and extortion, in India and diaspora communities outside of

India, focusing on individuals whose targeting would enhance the Bishnoi OCG's reputation for extreme violence and maximize the likely success of future extortion schemes.

f. Defendants BISHNOI, SINGH, and GODARA, and others known and unknown to the Grand Jury, would claim credit for acts of violence through social media posts, media interviews, and word of mouth, to enhance the Bishnoi OCG's reputation for extreme violence and maximize the likely success of future extortion schemes.

g. Defendants BISHNOI, SINGH, GODARA, and KANG, and others known and unknown to the Grand Jury, would identify victims to extort in the United States, Canada, the United Kingdom, and elsewhere, including, in particular, prominent cultural, political, and business leaders in Indian diaspora communities.

h. Defendants SINGH, KANG, and BHATTI, and others known and unknown to the Grand Jury, would collect information on potential extortion targets, including, but not limited to, pattern-of-life information and information about the family members of targets.

i. Defendants BISHNOI, SINGH, GODARA, KANG, BHATTI, BHULWAN, and SUMIT, and others unknown to the Grand Jury, would contact extortion targets using encrypted messaging applications such as WhatsApp, and demand payments, including by, among other means, threatening physical harm to victims, threatening physical harm to victims' family members, and promising protection from harm to victims.

j. Defendants BISHNOI, SINGH, GODARA, KANG, BHATTI, and BHULWAN, and others known and unknown to the Grand Jury, would leverage high-profile acts of violence committed by members and associates of the Bishnoi OCG, including, but not limited to,

political assassinations, murders, shootings, kidnappings, maimings, and assaults, to encourage compliance with extortion demands by referencing those prior acts to extortion victims.

k. No Name Given Kamal, Kestutis Bauza, and others known and unknown to the Grand Jury, would collect extortion payments from extortion targets on behalf of the Bishnoi OCG.

l. Defendants BISHNOI, SINGH, and KANG, and others known and unknown to the Grand Jury, would oversee and manage the transportation of bulk quantities of cocaine and methamphetamine across the United States and to the U.S.-Canada border for drug trafficking organizations located in the United States, Mexico, and elsewhere.

m. Defendants BISHNOI, SINGH, and KANG, and others known and unknown to the Grand Jury, would direct and coordinate the theft of cocaine and methamphetamine from other drug trafficking organizations, and manage the subsequent distribution of stolen loads of cocaine and methamphetamine.

n. No Name Given Kamal, and others unknown to the Grand Jury, would assist with the transfer of funds received by the Bishnoi OCG, including from extortion payments and drug trafficking activity, to other members and associates of the Bishnoi OCG, including to members located in India.

G. <u>OVERT ACTS</u>

25. In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants BISHNOI, SINGH, GODARA, KANG, BHATTI, BHULWAN, and SUMIT, and others known and unknown to the Grand Jury, committed and caused to be committed

various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

DEFENDANTS BISHNOI AND SINGH ORDER THE ASSASINATION OF H.S.N. ON JUNE 18, 2023 IN SURREY, BRITISH COLUMBIA

Overt Act No. 1: No later than June 18, 2023, defendants BISHNOI and SINGH ordered the assassination of H.S.N., a prominent religious and political leader from the Punjab state of India who was living in British Columbia.

Overt Act No. 2: No later than June 18, 2023, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and Co-Conspirator 4 agreed to assist with the assassination of H.S.N.

Overt Act No. 3: No later than June 18, 2023, defendant BISHNOI provided Co-Conspirator 1 with a photograph of, and multiple addresses for, H.S.N. to facilitate the assassination of H.S.N.

Overt Act No. 4: On June 18, 2023, Co-Conspirator 1 and Co-Conspirator 2 shot and killed H.S.N. as H.S.N. was leaving the Guru Nanak Sikh Gurudwara temple in Surrey, British Columbia.

DEFENDANTS BISHNOI AND SINGH CLAIM RESPONSIBILITY FOR A SHOOTING AT R.G.'s RESIDENCE IN VANCOUVER, CANADA, AND ATTEMPT TO EXTORT R.G.

Overt Act No. 5: On November 25, 2023, defendant BISHNOI claimed responsibility on behalf of the "Lawrence Bishnoi Group" for a shooting that occurred on November 24, 2023 in Vancouver, Canada at the residence of R.G., a prominent Indian actor and singer, in an online post to Facebook that warned, in Punjabi, "no one can save you from us."

Overt Act No. 6: Between December 2025 and March 2026, defendant SINGH contacted a phone number used by R.G. and R.G.'s manager on multiple occasions and, in multiple voice messages,

claimed responsibility for the November 24, 2023 shooting and demanded payment from R.G.

Overt Act No. 7: On a date between December 1, 2025 and March 1, 2026, defendant SINGH contacted a phone number used by R.G. and R.G.'s manager and, through a voice message in Punjabi, threatened R.G. "you can ignore my message, you will not be able to ignore the bullets coming your way."

DEFENDANT BISHNOI AND OTHER MEMBERS OF THE BISHNOI OCG ATTEMPT TO EXTORT A.G. IN BRAMPTON, ONTARIO

Overt Act No. 8: Between December 6, 2023 and January 4, 2024, defendant BISHNOI, and others unknown to the Grand Jury, contacted A.G. in Brampton, Ontario, and, in multiple voice calls, threatened harm against the family members of A.G. and A.G.'s employees and demanded a payment of $500,000 CAD.

THE BISHNOI OCG THREATENS S.S. IN FONTANA, CALIFORNIA

Overt Act No. 9: On December 5, 2024, a co-conspirator contacted S.S. in Fontana, California, and, through multiple voice calls in Punjabi, identified himself as a member of the "Lawrence group," referenced the murder of H.S.N., told S.S. "I have got all your information," and threatened to "meet" S.S. at S.S.'s upcoming immigration hearing.

DEFENDANTS SINGH AND GODARA CLAIM RESPONSIBILITY FOR THE DECEMBER 23, 2024 MURDER OF S.Y. IN STOCKTON, CALIFORNIA

Overt Act No. 10: On December 23, 2024, defendants SINGH and GODARA claimed responsibility on behalf of the "Lawrence Bishnoi Group" for the December 23, 2024 murder of S.Y. in Stockton, California in an online post to Facebook that warned, in Punjabi,

"[a]ll our enemies, be prepared, any corner of the world you reach, we will reach there."

DEFENDANTS BISHNOI, SINGH, GODARA, KANG, BHATTI, BHULWAN, AND SUMIT CONSPIRE TO EXTORT UC-1 IN LOS ANGELES, CALIFORNIA

Overt Act No. 11: On January 25, 2025, defendant KANG spoke to a person who defendant KANG and other co-conspirators believed was an individual who was owed a debt of between $100,000 to $200,000, but who in fact was a confidential informant working with law enforcement ("CI-1"), and agreed to assist CI-1 with extorting the debtor in exchange for a fee of $16,000.

Overt Act No. 12: On January 29, 2025, CI-1 sent defendant KANG a video that defendant KANG and other co-conspirators believed was a video of a co-conspirator shooting a firearm at the residence of the individual who purportedly owed CI-1 a debt, but was in fact a video of a simulated shooting that had been staged by law enforcement (the "UC-1 Extortion Video").

Overt Act No. 13: On February 3, 2025, defendant BHATTI contacted CI-1 for purposes of obtaining information from CI-1 about the individual who CI-1 claimed owed CI-1 a debt, and accepted the UC-1 Extortion Video from CI-1.

Overt Act No. 14: On February 5, 2025, defendant BHATTI sent the UC-1 Extortion Video to a person who defendant BHATTI and other co-conspirators believed was an individual who resided in the Los Angeles area and owed CI-1 a debt of between $100,000 to $200,000, but who in fact was an undercover law enforcement agent ("UC-1").

Overt Act No. 15: On February 5, 2025, defendant BHATTI spoke with UC-1 over WhatsApp, demanded a payment of $200,000, and

threatened, in Punjabi, "if you don't give me the money, I'll kill you."

<u>Overt Act No. 16:</u> On February 5, 2025, in response to UC-1's resistance to agree to pay $200,000, defendant BHATTI informed UC-1, in Punjabi, that "now you owe $400,000," threatened to kill UC-1, and gave UC-1 48 hours to pay "or we're going to change your life."

<u>Overt Act No. 17:</u> On February 8, 2025, defendant KANG reassured CI-1, in Punjabi, "we'll get it out of [UC-1], bro," and stated "we have brothers in LA."

<u>Overt Act No. 18:</u> On February 12, 2025, defendant KANG introduced CI-1 to defendant SINGH on a Signal call to facilitate extortion payments from UC-1.

<u>Overt Act No. 19:</u> On February 12, 2025, defendant SINGH requested information from CI-1 about UC-1 on a WhatsApp call.

<u>Overt Act No. 20:</u> On February 14, 2025, defendant BHATTI spoke with UC-1 over WhatsApp, demanded an initial payment of $200,000, and threatened, in Punjabi, "you are putting your family in danger," and "you can go wherever you want, we're going to find out where you are."

<u>Overt Act No. 21:</u> On March 5, 2025, defendants SINGH and SUMIT spoke with UC-1 over Signal, an encrypted messaging application, and negotiated a partial payment of $50,000 from UC-1.

<u>Overt Act No. 22:</u> On March 6, 2025, defendant GODARA spoke with UC-1 over Signal and demanded, in Punjabi, "you need to give us the money."

<u>Overt Act No. 23:</u> On March 7, 2025, defendant BHULWAN spoke with UC-1 over Signal, directed UC-1 to make four payments of

$50,000, and stated, in Punjabi, "once you begin paying us, then nobody will threaten you or your family."

Overt Act No. 24: On March 7, 2025, defendant SINGH spoke with UC-1 over Signal, in Punjabi, explained that "if you do pay up, then nobody will threaten you again," and warned that "if you commit to paying $200,000 and then you don't pay $200,000 then it[ will] be harmful for you."

Overt Act No. 25: On March 29, 2025, defendant BHULWAN spoke with UC-1 over WhatsApp and threatened, in Punjabi, that, because of UC-1's failure to pay or agree to make payments to the Bishnoi OCG, "Goldy [i.e., defendant SINGH] . . . [is] going to personally shoot you. Then you'll see what protection you have at home. Ok?"

Overt Act No. 26: On April 4, 2025, defendant SINGH sent UC-1 a Signal voice note in which defendant SINGH threatened, in Punjabi, "we are also only going to leave you alone if you pay us . . . I don't mess around. I don't know what they are going to do with you. But for me, it'll take me an hour to finish you. Don't get all big. I know who you are. I'm going to get the Mexicans to cut your ears. You'll wish you could wear glasses your entire life afterwards."

Overt Act No. 27: On April 10, 2025, after UC-1 agreed to make an initial extortion payment of $100,000, defendant BHULWAN provided UC-1 with the telephone number for Kestutis Bauza, who would receive an extortion payment of $100,000 from UC-1, and the serial number on a bill of currency to be used in the handoff of the extortion payment.

Overt Act No. 28: On April 10, 2025, Kestutis Bauza received, on behalf of the Bishnoi OCG, a $20,000 extortion payment from a courier for UC-1 in a parking lot in Commerce, California.

Overt Act No. 29: On April 11, 2025, defendants GODARA and BHULWAN spoke with UC-1 over Signal, and defendant GODARA threatened UC-1, in Punjabi, "I'm making you a promise. We are going to kill you. You embarrassed us. We will kill you. They shot at you, but we will kill you."

Overt Act No. 30: On April 11, 2025, defendant BHULWAN spoke with UC-1 over Signal and explained, in Punjabi, "I hung up because you need to speak with them. They're waiting on you. I need to tell Goldy that you're misbehaving and there's no point in talking to you."

Overt Act No. 31: On May 26, 2025, defendant BHATTI spoke with UC-1 over WhatsApp and stated, in Punjabi, "I want money," specifically "$200,000," and warned that if UC-1 did not pay then "we're going to cause harm to you. Your kids, your family, everyone. It doesn't matter to me if I kill someone. That's what I do."

Overt Act No. 32: On May 29, 2025, defendant BHATTI provided UC-1 with the serial number on a bill of currency to be used in the handoff of an extortion payment and the address of a parking lot in Riverside, California at which to meet for the handoff.

Overt Act No. 33: On May 29, 2025, No Name Given Kamal received, on behalf of the Bishnoi OCG, a $15,000 extortion payment in a parking lot in Riverside, California.

Overt Act No. 34: On May 30, 2025, after UC-1 provided less than the agreed-upon extortion payment, defendant BHATTI sent UC-1 a WhatsApp voice note in which defendant BHATTI asked, in Punjabi, "what's the meaning of this," and threatened "now you're going to get hurt."

Overt Act No. 35: On June 2, 2025, defendant BHATTI sent UC-1 a WhatsApp voice note in which defendant BHATTI stated, in Punjabi, "I know we all make mistakes. Let's find a solution. But if you make another mistake, then I'm going to have to hurt you. I get people killed daily. It doesn't matter to me. You know this."

DEFENDANT SINGH AND OTHER MEMBERS OF THE BISHNOI OCG ATTEMPT TO EXTORT H.T. IN SURREY, BRITISH COLUMBIA

Overt Act No. 36: On June 11, 2025, defendant SINGH contacted H.T., the director of an immigration consultancy in Surrey, British Columbia, and, in a voice message in Punjabi, told H.T. "it's your turn to file your taxes" and "get $500,000 ready, if you ignore me then I'm happy to kill you."

Overt Act No. 37: On July 25, 2025, defendant SINGH contacted H.T. and, in a voice message in Punjabi, told H.T. "I will for sure kill you, you sellout" and "save this recording it is the issued judgment on your death, you cunt, I will kill you."

Overt Act No. 38: On August 19, 2025, defendant SINGH contacted H.T. and, in a voice message in Punjabi, told H.T. "my promise to you is that you will not die of natural causes, I promise that you will also die by a bullet, understood," "you will die because of your dog like tongue," and "your family will suffer."

DEFENDANT SINGH AND OTHER MEMBERS OF THE BISHNOI OCG ATTEMPT TO EXTORT S.S. IN THE UNITED KINGDOM

Overt Act No. 39: On June 11, 2025, defendant BHULWAN contacted S.S., the owner of a trucking company in the United Kingdom, and, in a voice message in Punjabi, demanded that S.S. pay £250,000.

Overt Act No. 40: On June 11, 2025, defendant BHULWAN contacted S.S. and, in a voice message in Punjabi, stated that he was with the "Lawrence Bishnoi group," asked "what your decision is," and threatened that if S.S. attempted to "stay strong," "then within a few days we will kill you."

Overt Act No. 41: On June 11, 2025, defendant BHULWAN contacted S.S. and, in a voice message in Punjabi, threatened S.S. "stay strong, we will shoot you in the ass, you pussy."

Overt Act No. 42: No later than November 1, 2025, defendant SINGH contacted S.S. and, in a voice message in Punjabi, stated that "we had sent you a message, brother also talked to you" and that "until now, you have not straightened up," and threatened that S.S. had "2 to 3 days" to reach a settlement before facing "damage."

THE BISHNOI OCG ATTEMPTS TO EXTORT M.K. IN THOUSAND OAKS, CALIFORNIA

Overt Act No. 43: On December 4, 2025, a co-conspirator contacted M.K. in Thousand Oaks, California and, in a voice message in Punjabi, claimed to be affiliated with defendant GODARA and demanded M.K. make a "3 million" payment.

Overt Act No. 44: On January 2, 2026, a co-conspirator contacted M.K. in Thousand Oaks, California and, in a voice message in Punjabi, claimed to be affiliated with defendant GODARA and demanded M.K. make a "5 million dollar" payment and threatened "whether [] in America or India we will finish all of your activities completely" if M.K. did not call back.

Overt Act No. 45: On January 5, 2026, a co-conspirator contacted M.K. in Thousand Oaks, California and, in a voice message in Punjabi, claimed to be affiliated with defendant GODARA and told

M.K. that M.K. had "two hours time to reply as soon as you hear this, otherwise you won't be in any condition to reply."

DEFENDANTS BISHNOI, SINGH, AND KANG OVERSEE THE TRANSPORTATION OF 49 KILOGRAMS OF COCAINE IN FONTANA, CALIFORNIA

Overt Act No. 46: No later than November 14, 2024, defendants BISHNOI, SINGH, and KANG coordinated with Co-Conspirator 5, a member of the Bishnoi OCG, regarding routes for the transportation of cocaine and methamphetamine on long-haul semi-trucks across the United States and to the U.S.-Canada border, and regarding the protection of long-haul semi-trucks smuggling cocaine and methamphetamine under Co-Conspirator 5's management.

Overt Act No. 47: On November 14, 2024, Co-Conspirator 5 met with CI-1 in Greenwood, Indiana to coordinate logistics for transporting cocaine to the U.S.-Canada border for a drug trafficking organization contracting with Co-Conspirator 5 and the Bishnoi OCG for drug transportation services.

Overt Act No. 48: On November 15, 2024, Co-Conspirator 6 received, on behalf of Co-Conspirator 5 and the Bishnoi OCG, approximately 49 kilograms of a mixture and substance containing a detectable amount of cocaine in multiple boxes at a parking lot in Fontana, California for transportation to the U.S.-Canada border.

DEFENDANTS BISHNOI AND SINGH OVERSEE THE THEFT AND DISTRIBUTION OF COCAINE AND METHAMPHETAMINE IN THE LOS ANGELES AREA

Overt Act No. 49: In March 2024, at the direction of defendants BISHNOI and SINGH, a co-conspirator stole approximately 220 kilograms of a mixture and substance containing a detectable amount of cocaine in the greater Los Angeles area from a rival drug trafficking organization.

Overt Act No. 50: In April 2024, defendant BISHNOI directed Co-Conspirator 7 to steal approximately 500 kilograms of a mixture and substance containing a detectable amount of methamphetamine in the greater Los Angeles area from a rival drug trafficking organization.

Overt Act No. 51: In July 2025, at the direction of defendants BISHNOI and SINGH, Co-Conspirator 7, and others unknown to the Grand Jury, stole approximately 300 kilograms of a mixture and substance containing a detectable amount of cocaine in the greater Los Angeles area from a rival drug trafficking organization.

COUNT TWO

[18 U.S.C. § 1951(a)]

[ALL DEFENDANTS]

26. The Grand Jury realleges Paragraphs 1 through 21 of this Indictment here.

A. OBJECT OF THE CONSPIRACY

27. Beginning on a date unknown to the Grand Jury, and continuing to on or about July 1, 2026, in Los Angeles and Riverside Counties, within the Central District of California, and elsewhere, defendants BISHNOI, SINGH, GODARA, KANG, BHATTI, BHULWAN, SUMIT, NO NAME GIVEN KAMAL, and KESTUTIS BAUZA conspired with each other and others known and unknown to the Grand Jury to knowingly and intentionally obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion, in violation of Title 18, United States Code, Section 1951(a).

B. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

28. The object of the conspiracy was to be accomplished, in substance, through the means set forth in Section F of Count One of this Indictment, which are realleged and incorporated here.

C. OVERT ACTS

29. In furtherance of the conspiracy, and to accomplish its object, on or about the following dates, defendants BISHNOI, SINGH, GODARA, KANG, BHATTI, BHULWAN, SUMIT, KAMAL, and BAUZA, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, Overt Acts 1 through 51, as set forth in Count One of this Indictment, which are realleged and incorporated here.

COUNT THREE

[18 U.S.C. § 1951(a), 2(a)]

[DEFENDANTS KANG AND BHATTI]

30. Between January 25, 2025 and February 14, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants SUKHRAJ SINGH KANG and First Name Unknown ("FNU") Last Name Unknown ("LNU"), also known as "Rajan Bhatti," "Victor," "Kala," and "Vankit" ("BHATTI"), each aiding and abetting the other, knowingly and with the intent to obtain property, attempted to obstruct, delay, and affect foreign commerce and the movement of articles in commerce by extortion, in that defendants KANG and BHATTI attempted to obtain property, consisting of money from UC-1, with UC-1's consent induced by the wrongful use of threatened force, violence, and fear.

COUNT FOUR

[18 U.S.C. § 1951(a)]

[DEFENDANT GODARA]

31. On or about March 6, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant ROHIT GODARA, also known as "Guru," "Jai Shri Ram," "Rawata Ram," "Rawata Das," and "Pawan Kumar," knowingly and with the intent to obtain property, attempted to obstruct, delay, and affect foreign commerce and the movement of articles in commerce by extortion, in that defendant GODARA attempted to obtain property, consisting of money from UC-1, with UC-1's consent induced by the wrongful use of threatened force, violence, and fear.

COUNT FIVE

[18 U.S.C. § 1951(a)]

[DEFENDANT BHULWAN]

32. On or about March 7, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant First Name Unknown ("FNU") Last Name Unknown ("LNU"), also known as "Bhulwan" ("BHULWAN"), knowingly and with the intent to obtain property, attempted to obstruct, delay, and affect foreign commerce and the movement of articles in commerce by extortion, in that defendant BHULWAN attempted to obtain property, consisting of money from UC-1, with UC-1's consent induced by the wrongful use of threatened force, violence, and fear.

COUNT SIX

[18 U.S.C. § 1951(a)]

[DEFENDANT SINGH]

33. On or about March 7, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant SATINDERJEET SINGH, also known as "Satinderjit Singh Brar" and "Goldy Brar," knowingly and with the intent to obtain property, attempted to obstruct, delay, and affect foreign commerce and the movement of articles in commerce by extortion, in that defendant SINGH attempted to obtain property, consisting of money from UC-1, with UC-1's consent induced by the wrongful use of threatened force, violence, and fear.

COUNT SEVEN

[18 U.S.C. § 1951(a)]

[DEFENDANT SINGH]

34. On or about April 4, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant SATINDERJEET SINGH, also known as "Satinderjit Singh Brar" and "Goldy Brar," knowingly and with the intent to obtain property, attempted to obstruct, delay, and affect foreign commerce and the movement of articles in commerce by extortion, in that defendant SINGH attempted to obtain property, consisting of money from UC-1, with UC-1's consent induced by the wrongful use of threatened force, violence, and fear.

COUNT EIGHT

[18 U.S.C. § 1951(a)]

[DEFENDANT BHATTI]

35. On or about May 26, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant First Name Unknown ("FNU") Last Name Unknown ("LNU"), also known as "Rajan Bhatti," "Victor," "Kala," and "Vankit" ("BHATTI"), knowingly and with the intent to obtain property, attempted to obstruct, delay, and affect foreign commerce and the movement of articles in commerce by extortion, in that defendant BHATTI attempted to obtain property, consisting of money from UC-1, with UC-1's consent induced by the wrongful use of threatened force, violence, and fear.

COUNT NINE

[21 U.S.C. § 846]

[DEFENDANTS BISHNOI, SINGH, AND KANG]

A. OBJECTS OF THE CONSPIRACY

36. Beginning on a date unknown to the Grand Jury, and continuing until on or about June 18, 2026, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants LAWRENCE BISHNOI, SATINDERJEET SINGH, also known as ("aka") "Satinderjit Singh Brar" and "Goldy Brar," and SUKHRAJ SINGH KANG, aka "Guru," "Jai Shri Ram," "Rawata Ram," "Rawata Das," and "Pawan Kumar," and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally distribute and possess with intent to distribute the following controlled substances:

(1) at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(ii)(II); and

(2) at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii).

B. MANNER AND MEANS OF THE CONSPIRACY

37. The objects of the conspiracy were to be accomplished, in substance, through the means set forth in Section F, Paragraphs 24.l through 24.n, of Count One of this Indictment, which are realleged and incorporated here.

C. <u>OVERT ACTS</u>

38. In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants BISHNOI, SINGH, and KANG, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, Overt Acts 46 through 51, as set forth in Count One of this Indictment, which are realleged and incorporated here.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 1963, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) Any interest the convicted defendant has acquired or maintained as a result of any such offense;

(b) Any interest in, security of, claim against, or property or contractual right of any kind affording a source or influence over, any enterprise which the convicted defendant has established, operated, controlled, conducted, or participated in the conduct of, as a result of any such offense;

(c) Any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection as a result of any such offense; and

(d) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3. Pursuant to Title 18, United States Code, Section 1963(m), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the

property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 981(a)(1)(C), 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Two through Eight of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses;

(b) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence;

//

//

(b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[21 U.S.C. § 853]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Nine of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b) All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold

//

//

to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property.

A TRUE BILL

/S/
Foreperson

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

 for

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, Transnational Organized Crime
Section

DECLAN T. CONROY
Assistant United States Attorney
Deputy Chief, Transnational Organized
Crime Section